UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL I MCGEE,

          Plaintiff,

v.                                         Case No. 18-cv-0072-bhl

LINDY WIEDMEYER,[1]
CLAIRE EVERS,

          Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

Inspections of Plaintiff Michael McGee's Milwaukee restaurants turned up some nauseating problems. He stored foods at unsafe temperatures, lacked handwashing facilities, and kept hazardous chemicals beside cooking spices. And that was just on a single Friday in September of 2017. (ECF No. 33-1 at 13.) Unsurprisingly, McGee became well-acquainted with the City of Milwaukee Health Department. But he contends that it was his history of political advocacy, not his operations' unsanitary conditions, that motivated Health Department officials to conspire with the Wisconsin Department of Agriculture, Trade, and Consumer Protection (DATCP) to illegally deprive him of his restaurant license. Based on this theory, McGee filed a lawsuit alleging violations of his Fourteenth Amendment due process and equal protection rights. He settled his case against the DATCP defendants, but the defendants from the City Health Department remain. They have moved for summary judgment, and because no reasonable trier of fact could find for McGee, their long-pending motion will be granted.

---

[1] The original case heading improperly referred to the first named defendant as "Lindy Weidmeyer" based on a misspelling contained in Plaintiff's complaint.

# FACTUAL BACKGROUND[2]

From 2004-2008, Michael McGee was the 6th District Alderman in the City of Milwaukee. (ECF No. 55 at 2.) While in office, he clashed with the City Health Department over its alleged mistreatment of his majority-Black constituents. (*Id.*); *see also* CITY OF MILWAUKEE LEGISLATIVE REFERENCE BUREAU, CENSUS 2010 ALDERMANIC DISTRICT MAPS (2011). He believes this engendered the Department's deep-seated political bias against him. (ECF No. 55 at 2-3.)

In 2016, nearly a decade after his tenure as Alderman ended, McGee formed IFAMA Community Economics, LLC (*Id.* at 4) with the goal of providing "healthy food and resources to [Milwaukee] residents" to "ultimately change the health of Milwaukee for the better." Nyesha Stone, *Former Alderman McGee Gives Update on Lawsuit Against the City of Milwaukee*, MILWAUKEE COURIER (Apr. 5, 2019), https://milwaukeecourieronline.com/index.php/2019/04/05/former-alderman-mcgee-gives-update-on-lawsuit-against-the-city-of-milwaukee/. In 2017, IFAMA began doing business as both Oasis Foods and Country Fresh Foods. (ECF No. 55 at 4 & ECF No. 28 at 7.) Oasis Foods had its grand opening on June 19, 2017. (ECF No. 55 at 5.)

On July 24, 2017, Lindy Wiedmeyer, an Environmental Health Inspector with the City Health Department, visited Oasis because the name on its building did not match the name in the Health Department's reporting database. (*Id.* at 7.) Wiedmeyer's job duties required her to inspect food establishments to ensure they possessed the necessary licenses and met the City's Health Code standards. (*Id.* at 5.) On this occasion, she claims that she discovered Oasis Foods selling smoothies, which restaurants may not do without a license. (*Id.* at 7.) Oasis had no such license. (*Id.*) As a result, Wiedmeyer issued an Order to Cease smoothie sales. (*Id.*) Wiedmeyer returned the next day to ensure compliance with her order. (*Id.* at 8.) Instead, she found Oasis continuing to operate in contravention of the City's Health Code and licensing requirements. (*Id.* & ECF No. 33-1 at 5.)

---

[2] These facts are drawn from the parties' proposed statements of undisputed facts (and responses), (ECF Nos. 40, 54, 55 & 59), as well as the amended Complaint, (ECF No. 5). Disputed facts are viewed in the light most favorable to the non-moving party. However, the Court will not entertain Plaintiff's disputes based on allegations that Defendants made false accusations against him, which first arose in Plaintiff's April 12, 2019 Declaration (ECF No. 52) and expressly contradict his earlier deposition testimony (ECF No. 28). *See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (holding that a party may not directly contradict his previous testimony to prevent summary judgment).

One month later, on August 24, McGee received a Temporary and Mobile Food Establishment License from the State DATCP. (ECF No. 59 at 1 & ECF No. 33-1 at 1.) This type of license is usually sought by operators who want to run temporary food establishments at public events. WIS. DEP'T OF AGRICULTURE, TRADE AND CONSUMER PROT., TEMPORARY FOOD SERVICE GUIDELINES (2017). McGee, however, did not want the license solely for this purpose. (ECF No. 55 at 3.) He also intended to use it to operate his brick-and-mortar locations via a supposed "loophole" in the law, which he credited his friend, Commissioner of Health Bevan Baker, with discovering. (*Id.*)

On August 29, Wiedmeyer found McGee operating out of a truck, selling smoked turkey legs, beans, and egg rolls at Sherman Park. (*Id.* at 8.) She conducted an inspection and completed an Establishment Inspection Report that informed McGee of the compliance issues she discovered and the corrective action needed to ameliorate them. (*Id.* at 10.) The Report also informed McGee how to request a hearing if he felt aggrieved by the order. (*Id.*) McGee maintained that he had done nothing wrong. (*Id.*) Also on August 29, Director of Consumer Environmental Health Claire Evers emailed the DATCP informing them that McGee was challenging health inspectors. (*Id.*)

On September 2, Wiedmeyer discovered McGee selling food from a vacant lot on 13th and Vliet. (*Id.* at 11.) This prompted her to visit McGee's Facebook page where she learned he was advertising a food delivery service even though his Temporary and Mobile Food Establishment License from the DATCP did not permit such delivery. (*Id.*) On September 14, Evers held a conference call with McGee and Commissioner Baker where she expressed her understanding that a DATCP temporary license did not permit an operator to engage in food delivery. (*Id.* at 12.) Despite this, McGee continued to use his Facebook page to advertise a food delivery service. (*Id.* at 13.)

On October 17, Wiedmeyer emailed Brian Jorata, DATCP Food Science Licensing Specialist, to inform him of McGee's continued non-compliance. (*Id.*) On November 8, DATCP issued a summary special order voiding McGee's Temporary and Mobile Food Establishment License without prior notice. (ECF No. 59 at 3-4.) Then, on November 10, DATCP Bureau Director Peter Haase, Assistant Legal Counsel Cheryl Daniels, Retail Food and Recreational Technical Section Chief James Kaplanek, and Regulatory Specialist Cathy Klecker held a conference call with McGee. (ECF No. 55 at 14.) No one mentioned Wiedmeyer during the conversation. (*Id.* at 15.)

On December 5, Health Inspector Julie Hults found McGee processing food without a valid City of Milwaukee license and issued an Order to Cease. (*Id.* at 15-16.) On December 8, the City of Milwaukee granted McGee's application for a food license. (*Id.* at 16.) On January 2, 2018, McGee and DATCP entered into an agreement that restored his DATCP Temporary and Mobile Food Establishment License. (ECF No. 59 at 5.) Because of this, McGee forwent the licensing fee on his City of Milwaukee food license. (ECF No. 55 at 17.) Thus, on January 4, McGee's City of Milwaukee food license was suspended for non-payment. (*Id.*) Evers notified the DATCP of this suspension. (*Id.*) DATCP then suspended McGee's DATCP temporary license. (*Id.*) McGee appealed the decision to the State of Wisconsin Division of Appeals. (*Id.*) Administrative Law Judge Eric Defort ruled in McGee's favor, concluding that the DATCP was not legally justified in suspending his temporary restaurant license based on his failure to maintain a separate City of Milwaukee restaurant license. (*Id.* at 17-18.)

## SUMMARY JUDGMENT STANDARD

"Summary Judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact." *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)). Material facts are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

McGee alleges that the City Defendants violated his Fourteenth Amendment right to due process by colluding with the DATCP to void his temporary restaurant license and visiting his

Facebook page against City policy. He also alleges the City Defendants violated his Fourteenth Amendment right to equal protection by administering the State's licensing procedure in a prejudicial manner. None of these claims is supported by the record, so summary judgment will be granted.

## I. McGee Cannot Prevail on his Due Process Claims Because Neither of the City Defendants Personally Deprived Him of a Protected Interest.

The two elements of a procedural due process claim are "'(1) deprivation of a protected interest and (2) insufficient procedural protections surrounding that deprivation.'" *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018) (quoting *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 514, 531 (7th Cir. 2012)). When one is entitled to retain a license unless they violate a state law, the ability to operate under that license is "a clearly protected property right." *Rebirth Christian Acad. Daycare, Inc. v. Brizzi*, 835 F.3d 742, 747 (7th Cir. 2016). And "[i]t has long been clearly established that the 'root requirement' of due process is that a person 'be given an opportunity for a hearing *before* he is deprived of any significant property interest[.]'" *Rebirth*, 835 F.3d at 748 (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)).

### A. The City Defendants Were Not Involved in the DATCP's Decision to Suspend McGee's Temporary License.

McGee's procedural due process claim against the remaining defendants fails not for lack of a property right or corresponding deprivation, but rather because there is no evidence that these defendants had any role in deciding to terminate his state license. Absent such evidence, McGee has no case.

The record confirms that in November 2017, the DATCP summarily suspended McGee's Temporary and Mobile Food Establishment License without prior notice. In January 2018, the DATCP did it again, and this time, they based their decision on the legally questionable ground that McGee needed to maintain a separate City of Milwaukee restaurant license in order to retain his DATCP license. That behavior may have created a triable issue of material fact with respect to claims against the DATCP defendants, but McGee settled his due process claims against them two years ago. There is no evidence the remaining defendants, Wiedmeyer and Evers, had anything to do with the DATCP suspension decision. At worst, they were responsible for suspending his City of Milwaukee license, which McGee admits he allowed to lapse because the DATCP had agreed to reauthorize his state license.

McGee argues that government officials are to be held "responsible for the natural consequences of [their] actions." *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (quoting *Monroe v. Pape*, 365 U.S. 167, 187) (1961)). Wiedmeyer and Evers reported McGee's Health Code violations to the DATCP prior to the November suspension. They informed the DATCP that McGee had not paid the fee on his City of Milwaukee license just before the January suspension. But their accurate reporting of McGee's violations of City regulations does not render them liable for DATCP personnel's subsequent and independent actions, even if those later actions were legally questionable. Indeed, McGee offers no case law to support this contention. The natural consequence of Defendants' actions was a procedurally appropriate DATCP investigation. That the DATCP instead revoked McGee's temporary state license, allegedly improperly, cannot be a basis for claims against Wiedmeyer and Evers. Section 1983 claims require personal involvement. *See Taylor v. Ways*, 999 F.3d 478, 493-94 (7th Cir. 2021) (finding that a 1983 plaintiff must plausibly allege defendants were personally involved in constitutional violations).

Attempting to salvage his claim, McGee suggests—for the first time, in his response brief—that Wiedmeyer and Evers fabricated Health Code violations, and it was those fabrications that DATCP relied on to justify suspending his license without a hearing. It is well-settled that "[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). Yet that is exactly what McGee seeks to do here. Previously, he argued that Wiedmeyer and Evers harassed him because of political bias. He never so much as hinted that they also lied about the violations their frequent inspections uncovered. On the contrary, the record shows that McGee implicitly admitted in his deposition testimony that he *had* committed Health Code violations. *See* ECF No. 28 at 85:20 (McGee confirming he was able to correct the problems Wiedmeyer identified when she first visited Oasis); ECF No. 28 at 88:20 (McGee confirming that he was able to correct the problems Wiedmeyer identified when she visited him at 13th and Vliet). A party cannot prevent summary judgment by "creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). McGee's new story contradicts the record and, most importantly, his own prior testimony. As a result, the Court will not credit it, and this due process claim cannot survive summary judgment.

### B. There is No City Policy Against Using Facebook as an Investigative Tool.

McGee's due process claims based on Defendants' visits to his Facebook page are even harder to fathom. As a threshold matter, it is not clear how a City Health Inspector's visit to a Facebook page could possibly violate due process. McGee's assertion that the visit breached some City policy does not suffice to create an actionable claim for a violation of procedural due process. Moreover, the record shows that McGee is simply confused on the facts. The Milwaukee City Health Department has no policy that prohibits health inspectors from reviewing an operator's Facebook activity. (ECF No. 55 at 11.) At most, they have a computer system that, for understandable reasons, precludes city employees from using city computers to check Facebook at work. (ECF No. 43-5 at 1.) That policy would not seem to apply to prevent inspectors or police from monitoring potential wrongdoing. And, even if it did, it would not create any enforceable rights in McGee. Therefore, this claim also cannot survive summary judgment.

### II. McGee's Equal Protection Class-of-One Claim Must Fail Because He Cannot Show There Was No Rational Basis for Defendants' Actions.

While usually thought to protect members of vulnerable groups from state-sponsored inequity, the Equal Protection Clause also "proscribes state action that irrationally singles out and targets an individual for discriminatory treatment as a so-called 'class of one.'" *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)). The Seventh Circuit's class-of-one standard "is in flux." *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012). The most recent attempt to clarify it resulted in no controlling opinion. *See Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012). "The crux of the disagreement was whether the plaintiff in a class-of-one claim must demonstrate only that there is no possible justification or rational basis for the defendant's actions, or if the plaintiff must demonstrate a lack of justification *and* also present evidence of hostile intent or animus, or if the plaintiff must demonstrate an absence of rational basis, which can be satisfied with evidence of animus." *Brunson v. Murray*, 843 F.3d 698, 706 (7th Cir. 2016) (emphasis in original) (citations omitted). What is clear is that the plaintiff must *at least* be able to demonstrate an absence of rational basis for the defendants' actions. *See id.*

### A. The Record Shows Defendants Acted on a Rational Basis.

As with his due process claim, McGee's equal protection argument makes little legal sense when applied to Wiedmeyer and Evers, the only remaining defendants. These defendants worked

for the City and, almost definitionally, had no control over the application of the *State* licensing procedure. That aside, there is also no way for McGee to demonstrate the absence of a rational basis for the actions of Wiedmeyer and Evers that McGee challenges. They inspected and monitored his restaurants' compliance with City Health Code requirements and then reported concerns to the DATCP.

McGee's complaint alleges Wiedmeyer's health inspections were motivated by political bias, but he has no evidence to support this accusation. The undisputed record indicates that neither Wiedmeyer nor Evers had McGee's former career as an Alderman in mind when they addressed his admitted Health Code violations. (ECF No. 55 at 5-6.)[3] Further, McGee never spoke to either Defendant about his political history. (*Id.*) And despite an Open Records request, McGee was not able to find a single reference to his prior career among the Defendants' letters, emails, and text messages. (*Id.* at 3.)

This case is thus far different than the class-of-one claim the Seventh Circuit allowed to proceed in *Brunson*. There, Bridgeport, Illinois officials denied Brunson's application to renew his liquor license for no reason. "Brunson offered evidence of a pattern of discriminatory behavior on the part of the government." *Brunson*, 843 F.3d at 707. He also showed that there was no rational and legitimate reason for the mayor to single him out. *Id.* at 707-08. In fact, the mayor could not offer "'any reasons, not even a spurious reason, for his inaction'" because he had "no discretion to delay the *pro forma* renewal." *Id.* at 708. Here, Wiedmeyer's job *required* her to inspect restaurants for Health Code compliance. (ECF No. 39 at 23.) If she inspected McGee more frequently than other operators, that is likely because his flagrant noncompliance generated an avalanche of complaints. (ECF No. 55 at 13.) From cooking egg rolls on the floor of his truck (*Id.* at 8) to storing toxic substances alongside cooking spices (ECF 33-1 at 13), McGee's operation appears to have been rife with public health violations. Wiedmeyer would be more subject to criticism had she not investigated his restaurants, especially given his long history of flouting Health Department Orders to Cease.

Further, by McGee's own admission, he was attempting to use a "loophole" that no one else knew about. (ECF No. 55 at 3-4.) Thus, unlike Brunson's liquor license application, there was nothing routine about McGee's operation. So even setting aside the slew of sanitation

---

[3] Again, the Court will not credit McGee's attempt to amend his complaint with allegations that Wiedmeyer and Evers falsely reported his Health Code violations.

violations, the Health Department's prolonged investigation into McGee's unique use of the DATCP temporary restaurant license cannot be called irrational.

Because he cannot possibly show that the City Health Department's actions lacked a rational basis, McGee's equal protection claim cannot survive.

### III. Even if McGee Could State a Due Process or Equal Protection Claim, His Case Would be Dismissed Because Defendants Are Entitled to Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If the defendant asserts qualified immunity, the plaintiff has the burden to show that the defendant's conduct violated a constitutional right, and the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

While *Rebirth* indicates that improperly denying a license holder the ability to use their license violates a clearly established constitutional right, there is no evidence that Defendants violated that right, nor could a reasonable City Health Department official have concluded that anything Defendants did was unlawful under the circumstances. *Rebirth*, 835 F.3d at 742. Neither Wiedmeyer, nor Evers had the authority to grant or revoke licenses. (ECF No. 39 at 16.) They were, however, required to inspect restaurants and report Health Code violations. (*Id.*) To defeat their invocation of qualified immunity, then, McGee must show that Defendants' conformance with the mandatory duties of their occupations represented behavior that a reasonable Health Department official would believe to be clearly unlawful. A clever academic might manage to conjure a hypothetical where this holds true. But it is certainly not true here, where Defendants merely reported City Health Code violations, consistent with the entire purpose of their jobs.

Thus, even if McGee had managed to state a claim under the Due Process or Equal Protection Clauses, his suit would still be barred by qualified immunity.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment under

Fed. R. Civ. P. 56 (ECF No. 38) is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on November 16, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge